May it please the Court, Sean Hart for Appellant Ken Marable, and I would like to reserve five minutes. There's one point I would like you to address at some time in your argument. And the same for Ms. Hendricks. That is, on the issue whether the state whistleblower statute permits a claim against individuals as contrasted with the agency, should we certify that to the Washington State Supreme Court? I ask the question because it seems like that was a dispositive ground below. We have no clear precedent on it, just arguments based on the language of the statute. I might be wrong, but I wanted to know your position, and I want to know Ms. Hendricks' position on certification. Well, Your Honor, since I practice in environmental or employment law and civil rights law, I would like it to be certified to the State Supreme Court, unless the Court looks at the State Supreme Court cases that I have cited in my brief and plain language of the statutes. Because that is a statutory construction issue, and I discussed, I believe it was the Safeway case. And I believe the Safeway case discussed RCW 4960.210 subsection 1, which is a subsection in the same section that we're discussing here. And in that case, I believe the Court allowed the case to proceed against the supervisors. Also, in 4240, I believe it's 030, where it discusses definitions. I believe it also states that any employee who uses his position to retaliate against another employee is liable under the Act. So if you start with a statutory – the rule of statutory construction that says that you start with a plain language, you start, in this case, with a definition section, and there it says, if any employee uses their position, period. And actually, there may be two issues here, because supervisory liability would suggest that it is the State. So actually, maybe we should certify it to the State Supreme Court, because in interpreting 4960.210 subsection 1, I believe that was a supervisor in a private company. And the reason that this whole issue came up was because the – one of the trial counsel in the pretrial hearing looked at the judge and said that she had legislative history back at the office that said that it could not be brought against supervisors, this particular cause of action. And – but she didn't have it with her because her office was being moved around, I believe is what she said. And that obviously raises the question of where was it during the summary judgment proceedings. Counsel, I don't care about any of this stuff between lawyers. It looks to me as though if I read the text of the statute, 4960 and 4240.050, there's no cause of action against the individual supervisor. But if I read the Brown decision, it looks as though there may be. So I'm wondering, and whether we should certify it to the Washington Supreme Court, whether this is an important State law question. I think you should. Because Judge Gould is. I think you should. Is there any more of an answer? Brown is not about whistleblowing. It's about other kinds of discrimination. Is there anything more to tell us, whether to – Well, just a little bit, Your Honor. I believe there's a rule of statutory construction that it may be the in peri marenta, I think is what the Latin is, that you read sections together. And we're talking about two subsections in the same section of the statute. That's – that's all I have to say on that. You mean 210 subpart 1 and 210 subpart 2, is that it? Yes, Your Honor. This is a subpart 2 case, and I think Brown was a subpart 1. I'd also appreciate at some point if you'd address the dismissal of the 1983 claims, which I understood were dismissed in this case, in the Marable case, based on the Supreme Court's Garcetti decision and the Ninth Circuit's Freytag decision. Yes, Your Honor. It's my opinion that this circuit did not change Garcetti and that Garcetti stands in that it has to be a – in order to bring it outside the First Amendment, the activity has to be an assigned part of the employee's duties. And in this case, Marable was complaining about pay padding, corruption. And he's not an auditor. In fact, the person he was complaining about directly was Phillips, who was his supervisor. So – and there's no – there's no duty that's defined anywhere where Marable is in charge of the accounting for his supervisor's pay. And in this case, Marable also complained to Nitchman because Nitchman was setting up the circumstances that allowed Phillips to pad his pay in part. There was also some pay padding here where the way it worked – well, one of the setups that they had was since they controlled the management and the union, they got in a union rule that said that if you got called at any time, you could – at home, you could bill up eight hours of overtime. And so what happened was Mr. Marable, who I believe at that time had 29 years of experience in the ferries, he saw that Phillips was obviously putting the ferry in a condition where it would be required that he call him at home. Also, he would actually order him to call him at home and talk about what's going on. And Mr. Marable – Would they get eight hours of overtime for a five-minute call? Yes, I believe they would. And that's how Mr. Phillips – now, we had a really difficult time getting the accounting in this case. And even the accounting we got is suspicious because in the lower left of the documents, it says revised and reissued. But for Phillips, on one of the years, he was supposed to be making approximately $76,000. And in one of the years of the documents that we did get, he was making $141,000. And that has an effect not only if you add up all the years he's been doing this, but also if you look at the effect on his retirement because when he retires – You get eight hours for a five-minute call? That's correct. It would be easy to get it up to $140,000. You just have an arrangement where your boss should call you and you should call him each night for, How are you doing? Are we going to be ready on that report tomorrow? Yes, Your Honor. Everybody gets eight hours? Yes. What a deal. Too bad we can't bill that way as lawyers. Yes. And the effect on the retirement, too, because – That was part of the union collective bargaining agreement? I don't recall seeing it in there, but I believe it was a union rule. And see, in this case, they controlled the senior members of the management were also senior members of the union. And, in fact, after this case was filed, I believe Mr. Nichman, he appointed himself to the senior union position so he wouldn't get fired by all the people that he had harassed. So he assigns himself as the senior position, and then he gets on to the union negotiating committee. And I haven't seen any changes they've made, but I've heard what they're working on. But that illustrates what's actually going on. Could you talk a little more concretely about the Garcetti and Freitag speech? I can't quite figure out how to apply Garcetti and Freitag here, and I'd appreciate your help. Yes, Your Honor. With Garcetti, it has to be part of your job, because I believe in Garcetti, it was a deputy prosecuting attorney, and I believe he had – If it's part of your job, there's no First Amendment protection, right? Yes, that's correct. Now, I guess the issue here is, since Nichman is the boss – And Phillips, because it goes Marable, Phillips, Nichman. Why wouldn't it be his job to say whatever it was? Because he's a subordinate, and it's not his job to audit his boss's pay, and it's also not his job to assign his boss what work to do. So it was not his job to figure out how Phillips was padding his pay, but he did based on his 29 years of experience at that time, and he knew it was wrong, and he saw the services at the State Ferries being cut back when all of his padding was really taking off. Now, one issue that came up was at the oral argument on the rehearing of the summary judgment was – Was it Marable's job to tell Nichman and Phillips what he observes? It's not his job to challenge or to investigate their pay padding and figure out how they're cooking the books, because he's a subordinate of both of them. Also, he's not in charge of the assignments that Nichman makes or the assignments of Phillips that allow some of the pay padding to occur. Now, one thing that happened at the rehearing on the summary judgment on Cause of Action 1, the 1983 claim, is that I believe the attorney – I thought Marable was the chief engineer in charge of the engine departments of all the ferries. He's responsible for implementing all the federal laws, all the state laws, all the regulations, all the directives for all the ferries. Marable? Yes. No. Marable is just – he works on one ferry for specific watches. There are several chiefs on a ferry, and on that ferry, above these chiefs, that's where Phillips was. And above – so you've got chiefs, you've got staff chief, which is Phillips, because one staff chief per boat, generally, and then above all the staff chiefs, you've got Nichman. So Marable is one of the chiefs on one boat, the boat that Phillips is the staff chief on. So it's not his job to work on their accounting or figure out what they've got going on as far as pay padding. One of your claims is that Nichman was not an unbiased decision maker when they had a hearing. Now, did you raise that issue at the proper time in administrative review? I – let's see. With Marable, we didn't file any paperwork. You didn't. You waited two years to bring the suit. So should you – should you not have raised this issue about him not being an unbiased decision maker in an administrative proceeding by a NPR? Well, I don't think so in this case because – and I don't think so in general under State law because the – what the State's trying to do, and what we're talking about here is the Fourteenth Amendment bias, causes of action established by the Ninth Circuit. And what the – what the State wants to have happen is they want to put in an extra administrative requirement so that a party who – who may need to file an action, they have to – they want to put in an extra administrative action and – It's not just the requirement that they appeal – appeal the decision that they say was biased. It's a good – As I understand it, your client didn't appeal that decision on the grounds of bias and also didn't make a labor grievance about bias. Yes, Your Honor. But raises the issue, you know, by 19 – Section 1983 plan. So isn't the issue for us on that issue whether failure to appeal it is a waiver? No, Your Honor, because 42 U.S.C. 1983, the Civil Rights Act, the way it was set up was that it was set up in the Reconstruction Era, and a number of states started to erect all of these administrative burdens. And so the Congress, the U.S. Congress, established the cause of action to prevent a person whose civil rights had been violated, to prevent them from having to go through all of these state administrative actions. So exhaustion of state administrative remedies is not required under 42 U.S.C. 1983. Okay. Now, one more point, unless the Court has any other questions at this time, that was brought up was there was a – the district court and the attorneys for Mr. Nitchman challenged whether Mr. Nitchman or whether Mr. Marable ever challenged the pay padding with Mr. Nitchman. And one thing I quoted at the district court level was Mr. Marable's affidavit, and this is excerpts of the record, page 177. And it states here, I made two telephone calls to Nitchman during the early October 2002 timeframe and discussed Phillips not being on the ferry and that he was working in the office. Initially, I called Nitchman regarding a memo Phillips had provided me in early October 2002. I then criticized the fact that Nitchman had not been on the boat very much during the previous several months and had only been showing up for overtime on the weekends. I concluded that Phillips was working in the office and avoiding working on the ferry he was assigned to so that he could pad his pay and avoid the criticism of the members of the fleet, such as myself, who disagreed with his pay padding. Nitchman did not address any of my concerns during the telephone calls and ignored my comments. At the very minimum there, you've got a question of fact if Nitchman is claiming that Mr. Marable never challenged him on his rules that allowed the pay padding. Any other questions? Roberts. Thank you, counsel. Thank you. May it please the Court. My name is Catherine Hendricks, and I'm here for Mark Nitchman and Doug Phillips. I'd like to begin with the First Amendment claim, if that pleases the Court. As the Court knows, the preliminary test under Connick is that the speech be identified clearly and that the Court then determine whether it relates to matters of public concern and merits constitutional protection. And in this case, in Marable, there was a hearing three days before trial on September 28th of 2006, in which the trial court worked hard to identify the speech that was allegedly protected. She was unable to do that and unable to find any speech that rose to the level of public concern, and therefore, she did not move beyond the Connick test, if you like. Sabalos, you can see it in a variety of different ways, but she has this. Well, Your Honor, it's because while it appears as pay padding in the appellate briefs, it did not appear as pay padding in the trial court. If you look at the affidavit. This section that was just read to us. And I'll look at it again. He says, I made two telephone calls to Nitchman during early October 2002 timeframe and discussed Phillips not being on the ferry. Now, certainly that would be appropriate for a chief engineer. It would impact his workload. It would impact the ship. But it very definitely would be an internal communication, not a matter of public concern. And he was working in the office. So it's not that he's off doing nothing. He's clearly doing something. It's just that Mr. Marable is concerned about where he is assigned. Initially, I called Nitchman regarding a memo Phillips had provided to me in early October 2002, and that's actually a memo about insubordination. I then criticized the fact that Phillips had not been on the boat very much during the previous several months and had been only showing up for overtime on the weekends. We know from Mr. Phillips' affidavit, which was filed in support of summary judgment, that he had been assigned to work on the international rules, safety rules for ferries, and that he did that for an extended period of time, almost 16 months. And so he had a specific work assignment away from the Puyallup. And then he goes on to say, and notice he doesn't say, I confronted Nitchman or I told Nitchman. He doesn't say anything. He says, I concluded Phillips was working in the office and avoiding working on the ferry he was assigned to so that he could pad his pay and avoid the criticism of a member of the fleet, such as myself, who disagreed with his pay padding. But notice there's nothing there about him transmitting that information to Nitchman. It is, in fact, his personal conclusion. The other information before the trial court at the time, it was deciding whether or not to go forward on the First Amendment claim, was similarly flawed. We had the allegations regarding the hydraulic lambs and the redesign of saltwater heat exchangers. Those were included in the original complaint. It's clear that under Connick, both of those would have been part of Mr. Marable's job responsibilities. No question, but that they were not matters of public concern. They were of concern to someone who was the chief engineer on a jumbo-marked commercial ferry. The next paragraph proposed by Mr. Hart during the September 28th hearing is paragraph 27, and you'll find it in the record at page 182. It's the paragraph regarding his conversation with DOT Auditor Jerry Silbertson. And what he says is, in my deposition on page 257, I referred to my complaint to State Department of Transportation Auditor Jerry Silbertson, and she stated it was her intention to confront Nitchman and Phillips regarding my allegation and stated the padding appeared to violate State law. Here we have a hearsay statement that was stricken by the trial court. She refused to consider the hearsay. And so what she did is request an offer of proof. Have you telephoned the State auditor, excuse me, the Department of Transportation auditor? Have you deposed her? Have you obtained documents from her? Can you tell me what she will testify to? Mr. Hart was unable to answer any of those things. He had not taken a deposition. He had not obtained her documents. He did not know what she would say. At the same time, the State produced the deposition testimony from Mr. Marable that he supposedly alludes to here, this, in my deposition on page 257 reference. And what he actually says in his deposition, and you'll find this in the transcript on page 60, is simply, I complained to Mark Nitchman in general about the special projects. I complained about not having a staff chief on the boat. That would be Doug Phillips, to take care of business instead of the office, in the office doing special projects. All of those things are properly within the purview of a chief engineer. And the trial judge correctly found that nothing here was a matter of public concern. So she never got to the Pickering balance test. She never got to Mount Healthy. She simply could not find language in this case that was a matter of public concern. Help me a little on the whistleblower thing. I'm wondering. I don't think you need to get to the question. Do we need to get to whether there's a private cause of action, or is it no evidence of a complaint to the State auditor, so goodbye whistleblower claim, whether there can be a suit against a private individual or not? I thought that in this claim, as opposed to the other one, that there was an issue of fact, whether he had gone to the auditor. No, Your Honor. What he did in September of 2001 was make a complaint to the Ethics Board. It was specific. It was about $570.56 worth of overtime pay claimed by acting chief engineers Hank Semsland. You can find this in the supplemental excerpts of the record at 229 to 234. You'll find all of the letters, including the complete report from the Ethics Board. And so when Jerry Silbertson interviewed Mr. Marabal, she was there on behalf of the Ethics Board, because the Ethics Board requests that individual departments investigate their own. That is a distinct process from the State auditor process that was also going on at this time that you know about from the Musselman case. And there, Don Johnson was interviewing a separate travel reimbursement request for a chief engineer who's not part of this case at all. So what you're saying is the evidence in the record shows a complaint about something else to the Ethics Board, not about what the supposed whistleblowing was about to the auditor. That's correct. Nothing to the auditor at all, and also something that, by definition, I believe it's found to be inadvertent, minor, and cured by the Ethics Board, and therefore you certainly don't have something that would meet the standard for the whistleblower statute of improper governmental action. Well, I want to make sure I don't lose my focus here. Okay. Let's suppose we think that falsely claiming overtime is a really bad thing. Actually, Your Honor, if you read the reports, and it's the question the court was pursuing earlier, the question is a much more interesting theoretical question about whether under this collective bargaining agreement, if a person is off-site but supervising work by telephone, whether or not they can claim overtime. Do we need to get into that? No, you don't. Was there a complaint to the auditor or not? There was a complaint not to the auditor. There was a complaint to the Ethics Board. Is the Ethics Board the same thing as the auditor or not? No, it is not. It's under a separate statute. So we don't have to decide whether the complaint was well-founded or not. You do not. It absolutely failed. No complaint to the auditor. Yes. Is there a genuine issue of fact about whether there was a complaint to the auditor? None. Is there any evidence that there was a complaint to the auditor? None. The evidence in the record you will find at 229 to 232 is absolutely clear that it was not to the auditor and that this process would not satisfy the statutory definition. There are those of us who don't work on the Washington State Ferry System, and we don't know the difference between Ethics Board and auditor. They're different things? They are different things. Let me ask about the claim that we had a biased decision-maker. Was there an obligation to appeal that disciplinary hearing? Yes, Your Honor. I do believe there was. Certainly, Mr. Marable can't really have it both ways. He has argued in this case that he was overwhelmingly concerned by paytabbing and fraud and was aware that Mr. Nitchman was at the center of this event. He argues that in one way. But in another way, he argues that he went forward to Mr. Nitchman as a neutral decision-maker and trusted him completely, somehow not knowing all of these allegations. He can't have both. If he believed Mr. Nitchman was biased, he had a responsibility. He had two attorneys. That's not really the issue. The issue is he claims now that Nitchman was a biased decision-maker. And at what point? There is some 1983 law that you don't have to pursue your State proceeding that you can go directly to 1983. And in this case, was there a duty to exhaust his State remedies before making that claim to this Court? I don't believe it's a – yes, I do understand your question. I don't believe it's an administrative exhaustion issue here, Your Honor. I believe it's a matter of recognizing that you may not be able to acknowledge the neutrality of a decision-maker as early as possible. So the parallel cases which the trial court relied upon were those for judges and determinations regarding unbiased judges. And the assumption in all of these cases is that it's incumbent upon a person who realizes there's a bias to act as soon as possible. And in this case, given what Mr. Marable has told us about his earlier feelings, he has to have known he would have a problem with Mr. Nitchman as a neutral decision-maker. And at what point should he have expressed that? He probably should have requested a separate decision-maker. Because it does appear that other individuals, other port engineers served. At what time should he have asked for that? He received a preliminary letter, Your Honor, so he certainly had a period of time before the hearing. As I recall, he received a letter. I don't remember the sequence for this case exactly. But he would have received a letter, I believe, 30 days before the hearing itself. And so he should have had ample opportunity to protest. Could you return your focus to the 1983 claims about free speech? As to those, I understand Judge Peckman had some difficulty or frustration with specific statements not being identified. You've gone over that somewhat. I certainly have. But also, didn't she also rely on Garcetti and Freitag in saying that there could be no claim here because it was something in the course of his duties? Yes, Your Honor, in pretty much the same way. Well, let's just focus on that for a minute as opposed to your alternative ground. Well, I was making the argument under Connick. But I think in any way you go about it, what you're really looking at is the question. Put your Connick argument to the side. All right. Because she, again, we have a case like on that last one where the trial judge ruled based on a certain case. If she was wrong based on that, then maybe we should ask her would she have excluded this on the other ground? Oh, I think there the argument is a closer one, Your Honor. Well, I know. But did she – I don't remember her writing something saying she was dismissing these claims under Connick. No, but what she did say, Your Honor, is that it was impossible to determine that whatever speech was being alleged related to matters of public concern. Well, let's just – you know, I want to at least hear your position on Garcetti and Freitag, which I haven't heard yet. That is, why is it part of Maribel's duties to complain about the pay structure of his bosses? I think it's probably different from that. Under Sabalos, as you know, the district attorney was in an office situation where he believed a search warrant had been issued inappropriately, and he believed his superiors ought to pull the case. They did not. So his communications were internal communications regarding a specific case. They were to superiors. They weren't necessarily to the sheriff's deputy who had probably made the misrepresentation in the warrant. In this case, what we have is his ongoing concern about whether or not Mr. Phillips is present on the ship. And that is the concern that was actually before the trial court. And that really is an appropriate concern. You say that padding pay – padding pay with kind of fraudulent overtime wasn't before the court? Oddly enough, though, Your Honor, it isn't. If you look at what Mr. Maribel's declaration actually says, not what Mr. Hart says in his appellate brief, but what was actually before the trial court, you will see that the concerns that he expressed to Mr. Nitchman were about Mr. Phillips' presence on the ship and about running a ship without the staff chief engineer regularly. Now, those are complaints that seem to me very closely parallel to those in Sabalos. Maybe we're cutting that argument a little too fine because what he was really saying, he's getting the overtime on the weekend and he's not showing up during the week. He's getting it all both ways. Well, that's what he says he concluded, Your Honor, but that isn't what he says he told Nitchman. Well, but he told Nitchman he's not showing up during the week and he's claiming – he's padding it over the weekend. He's claiming overtime on the weekend. And, of course, the full record indicates that Mr. Nitchman had ordered Mr. Phillips to be in the offices completing the safety regulations that were going to operate the entire ferry system. So Mr. Nitchman would have naturally had a response to that allegation, which is not included. But what we do have is Mr. Phillips. He would very well have a response to the allegation, but the question is what was Mirabal really complaining about? He was perhaps complaining about the overtime pay. I believe, Your Honor, that that qualifies then in the area of pay grievances, personnel issues, and the kind of small issues that happened internal to any organization. And it's a closer question, if you look at it that way. You're trying to turn it as just he wasn't on the ship when he should have been. Of course, he could have come to the ship on two days and then stayed home over the weekend and worked on his regulations or whatever. Your Honor, I would encourage you to read Doug Phillips' declaration, which is in the – I believe it's the third item in the supplemental excerpts of record. And I think you will find that it is very appropriate that he's in the office for that extended period of time. I don't think that's what the relevant thing is. It's what Mirabal was complaining about. It's not – Phillips might have been completely justified, but the issue is what was Mirabal complaining about, right or wrong? And, Your Honor, I think if you believe – if you read carefully his actual statements, what he says to Nitchman is separate from his conclusions. And we'll see. Do you have additional questions for me? Thank you, counsel. Thank you very much. All right. I've got a minute 43 left. I have a couple quick comments. First of all, opposing counsel read from Mr. Mirabal's deposition transcript and she actually stated that Mr. Mirabal stated that he complained about special projects. So, I mean, that's his sworn statement and they're saying that his statement  is not correct. Also, another issue on the bias, cause of action 2, in addition to no requirement of any kind of exhaustion of administrative remedies that Mr. Nitchman's attorneys seem to want to build up here, I think it's important to understand that there's Another problem with limiting the Ninth Circuit's cause of action for bias under the Fourteenth Amendment would be that it would assume that the person knows all the facts. And in this case, Mr. Mirabal didn't know how the whole system worked. It took a long time and a lot of discovery and a lot of different types of discovery, including a Public Records Act request that generated quite a few documents because we couldn't get them in discovery in this case. So it assumes that the person sitting there across from the person that may have a bias, it assumes that that person's going to know what's going on with the pay padding. Thank you, counsel. Thank you. Mirabal v. Nitchman is submitted. If I could, I think it may have been addressed indirectly. But, Ms. Henderson, did you ever state your position on whether an issue under 42.40 should be certified? Your Honor, what I stated is that this Court would not have to reach the legal issue because in both cases, in both cases, we're not to be able to decide that issue solely on the matter of the facts, because the facts are completely inadequate to establish that these individuals were whistleblowers. And in this case, it's based on your position that there was no complaint to the auditor. And on the other case... It's in writing. Thank you, Your Honor. Thank you, counsel. Mirabal v. Nitchman is submitted.
judges: Fletcher, Kleinfeld, Gould